FREEMAN, J.,
delivered the opinion of the court.
This bill is filed to enjoin defendants from cutting and using certain timber on lands formerly belonging *442 to one Joshua Kelly. In April, 1867, Kelly, who then owned the land on which the timber stands, entered into a contract with A. D. Talmage, by which it is stated “the said Kelly hereby sells to the party of the second part, to-wit, the said Talmage, all the timber on the land of said Kelly, excepting the choice rail trees and large pine trees suitable for making timber, at the rate of ten cents per cord, to be paid for as fast as used.” Both parties bound themselves to the performance of this contract, with their heirs, administrators and assigns. This contract, it is alleged, was transferred and assigned by Talmage to complainant,' which fact is shown to be true.
Respondent answers, and claims that the land was purchased at a sale made by order of the Chancery Court, at the instance of the administrator of Joshua Kelly, and purchased by respondent with the understanding that Talmage had only purchased the timber on 238 acres south of the Gap. It is admitted that respondent had .notice of the contract we have above quoted. It is then insisted that Kelly, when he made the contract, was at the point of death, incompetent to make a contract, and that this was one obtained by fraud, in misnaming the instrument to him by Talmage — reading it as selling, or contracting to sell, the timber on 238 acres south of the Gap, instead of the timber on all his land.
We need not discuss or decide the question as to whether the purchaser of land, with notice of a previous conveyance, can avoid the conveyance because ■ it was obtained from his vendor by fraud. Suffice it *443 to say, this is a question on which much doubt might be felt.
This, however, was a contract for the sale of personalty — that is, an agreement to sell the timber designated, but the property did not pass in the timber until it should be used or received by the purchaser- — at any rate, not till cut and corded up, as it. was to be paid for by the cord as used. See Hil-liard on Sales, p. 37, sec. 4, p. 43, sec. 8.
In the language of Park, J., in the case of Smith v. Surman, 9 B. & C., cited in note to Parsons on Cont., vol. 2, pp. 312-13, “the party could take no interest in the land by his contract, because he could not acquire any property in the trees till they were cut.” This being the nature of the ' contract — an agreement to sell personalty, to-wit, the timber growing on the land — if it is to be avoided, it probably should be by the administrator or personal representative, and not by the purchaser of the realty.
But passing from this, the party purchasing at a judicial sale of this character, would be in the position of an assignee, and stand in the shoes of the party under whom he claims as to the realty, taking it with all incumbrances upon it, not being an innocent purchaser; that is* he takes the land subject to-the stipulations of the contract of Kelly, in whose shoes he stands’. This contract, if valid and binding on Kelly, may well then be enforced and protected against interference as to the purchaser under the judicial sale. The contract of Kelly necessarily carried with it the right to enter upon the land for the pur *444 pose of cutting the wood, cording it, and taking it away for use: 2 Pars, on Cont., 47. The respondent purchaser, standing in the shoes of Kelly, cannot interfere with this right; and, purchasing with notice of its existence and terms, is bound by them. Any interference or destruction of the right of the party under this contract by the purchaser, would be an infraction of the contract between Kelly and Talmage, an intrusion upon the rights of another, which ought to be restrained by a court of equity on the. principle of good faith. If the purchaser at the judicial sale should be allowed to cut this timber and destroy it, it defeats and destroys the right of the purchaser from Kelly, who was prior in time, and therefore prior in right.
We may say, as to the allegations of fraud on the part of Talmage in obtaining the contract, and incapacity on the part of Kelly in making the contract, the proof fails to make out such a case; at most, it raises a suspicion, but is not enough to overturn a written contract duly entered into.
It is insisted in argument that. the contract is too indefinite and uncertain — not specifying any particular land, but selling the timber on all the land owned by the said Kelly. The rulé in such cases is, that the court may put themselves in the place of the parties, and then see how the terms of the instrument affect the property or the subject matter. With this view, evidence must be admissible of all the circumstances surrounding the parties to the instrument. See Greenl. Ev., vol. —, sec. 287; Add. on Cont., 847. *445 The facts of the case, as shown at the time, were, that Kelly owned 714 acres of land in Greene county. This land was valued mainly for its timber. The party purchasing it contemplated, or was engaged in the iron business, and wanted timber for his furnaces. No other land is shown to have been owned by Kelly, and it is evident no other land was- referred to except this body of land. Under these circumstances, we think the land on which the timber was sold is sufficiently identified; in fact, this is admitted by answer of respondent. The rule would be different .where the contract, under the statutes of frauds, is required to be in writing, or, at any rate, would have less extensive application, • as in such cases the terms of the contract must be found entire in the contract itself as to stipulations and subject matter.
The result is, the decree of the Chancellor must be reversed, and decree entered here for complainant.